530 F.2d 457
 Maria Rivera MENDEZ, individually and on behalf of all other
persons similarly
situated, Plaintiff, Louisa Roman, individually and on
behalf of all other persons similarly situated,
Intervenor-Plaintiff-Appellant,
v.
Hon. Louis B. HELLER, individually and as Presiding Justice
of Special Term, Part V, of the Supreme Court of the State
of New York, Kings County, Nat Liebowitz, individually and
as Chief Clerk of Special Term, Part V, of the Supreme Court
of the State of New York, Kings, County, both individually
and on behalf of all other persons similarly situated, and
Louis J. Lefkowitz, individually and as Attorney General of
the State of New York, Defendants-Appellees.
 No 290, Docket 75--7369.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 12, 1975.
Decided Feb. 10, 1976.
 
 John C. Gray, Jr., Brooklyn, N.Y. (Brooklyn Legal Services Corp. B, Marjory D. Fields Brooklyn, N.Y., of counsel), for appellant Roman.
 Amy Juviler, Asst. Atty. Gen., New York City (Louis J. Lefkowitz, Atty. Gen. of the State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., Rosalind Fink, Asst. Atty. Gen., New York City, of counsel), for defendants-appellees.
 Before OAKES, VAN GRAAFEILAND and MESKILL, Circuit Judges.
 VAN GRAAFEILAND, Circuit Judge:
 
 
 1
 This is an appeal from an order of a three-judge court dismissing plaintiffs' complaint on defendants' motion for summary judgment. We affirm.
 
 
 2
 The facts are not disputed. On March 31, 1973, appellant married Thomas Roman in Puerto Rico. She left her husband in California in June 1974, and moved to New York the following month. Appellant wishes to obtain a New York divorce and alleges that she has grounds therefor based on her husband's conduct in Puerto Rico and in California. At present, however, she does not satisfy the applicable two-year durational residency requirement. N.Y.Dom.Rel.Law § 230(5) (McKinney Supp.1975).[1] § 230(d)( McKinney Supp.
 
 
 3
 Proceeding on the assumption that a complaint for divorce would be rejected on jurisdictional grounds by the State courts, appellant turned to the federal courts, apparently expecting them to be more favorably disposed toward her contention that § 230(5) is unconstitutional. She intervened by court-approved stipulation in a 42 U.S.C. § 1983 action pending in the Eastern District of New York in which the New York durational residency requirement was already being challenged on the ground that it infringed upon the rights to due process and to travel. A three-judge court (Mulligan, C.J., Dooling, J., and Platt, J.) dismissed her suit for want of a justiciable controversy (unanimously) and on the merits (Dooling, J., dissenting), incorporating by reference an earlier opinion applying to the original plaintiff, whose case had since become moot. Mendez v. Heller, 380 F.Supp. 985 (E.D.N.Y.1974) (per curiam). The justiciability issue is before us at the instance of the Supreme Court.[2] 420 U.S. 916, 95 S.Ct. 1107, 43 L.Ed.2d 386 (1975).
 
 
 4
 The court below held that none of the named defendants had a legal interest sufficiently adverse to Roman to create a justiciable controversy.380 F.Supp. at 989--93. This conclusion rested in substance upon its finding that, if a divorce action were commenced, defendant Heller, a Justice of the New York Supreme Court, would be called upon to determine the constitutional validity of § 230(5) and, in so doing, would be acting in a judicial capacity. In this adjudicatory role, Justice Heller could not take any position on the merits of Roman's claim prior to his ruling thereon; hence, 'his posture would be that of an entirely disinterested judicial officer and not in any sense the posture of an adversary to the contentions made on either side of the case.'Id. at 990.
 
 
 5
 Roman does not seriously contend that Justice Heller could be considered her adversary in making this ruling. Rather, she seeks to avoid the affect of the decision below by claiming that Justice Heller is sued, not in his judicial capacity, but rather as the administrative superior of the defendant Clerk. Appellant reasons as follows: The Clerk, who initially screens divorce complaints for compliance with § 230(5), would reject her complaint. Unlike a ruling on the statute's constitutionality, the Clerk's action would be a purely administrative act, similar to the rejection of divorce complaints for failure to tender filing fees in Boddie v. Connecticut, 286 F.Supp. 968, 971--72 (D.Conn.1968) (three-judge court), aff'd on other grnds., 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971). As presiding Justice, defendant Heller controls and is responsible for the administrative acts of the Clerk. Because Justice Heller is sued only in this administrative capacity, he is a proper party defendant. Boddie, supra.
 
 
 6
 This argument is untenable and factually unwarranted. Unlike the situation in Boddie, 286 F.Supp. at 970, Roman cannot base her federal suit on the rejection of her divorce complaint for failure to meet statutory requirements, for she has made no attempt to secure a divorce. Compare Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); Larsen v. Gallogly, 361 F.Supp. 305 (D.R.I.1973) (three-judge court), vacated as moot, 420 U.S. 904, 95 S.Ct. 819, 42 L.Ed.2d 831 (1975); Wymelenberg v. Syman, 328 F.Supp. 1353 (E.D.Wis.1971) (three-judge court). Appellant's position rests on the hypothetical assumption that, if she sued for divorce, her complaint would be rejected pro forma, without consideration of the constitutional issues she presents here. We are unwilling, nor are we constitutionally able, to speculate that this would be the response of the State courts.[3] See Longshoremen's Local 37 v. Boyd, 347 U.S. 222, 74 S.Ct. 447, 98 L.Ed. 650 (1954).
 
 
 7
 Moreover, we do not believe that Justice Heller's official responsibilities can be compartmentalized in the manner suggested by appellant. Clearly, if Roman had filed a divorce complaint which questioned the validity of § 230(5), Justice Heller's consideration thereof would not have been restricted to determining whether she had been a New York resident for two years. Appellant's bifurcated conception of Justice Heller's duties simply does not comport with adjudicatory reality. Neither does her emphasis on the allegedly administrative role performed by Justice Heller comport with the gravamen of her complaint. Roman does not allege that she meets the requirements of § 230(5) but has not been permitted to file for a divorce; rather, she claims that a two-year durational residency requirement is an unconstitutional means by which to determine divorce jurisdiction. In contrast to the traditionally administrative task of fee collection, Boddie, supra, a court's investigation of its jurisdiction is eminently a judicial function. Thus, as between appellant and Justice Heller, this case does not present the 'honest and actual antagonistic assertion of rights,' Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345, 12 S.Ct. 400, 402, 36 L.Ed. 176 (1892), 'indispensible to adjudication of constitutional questions . . ..' United States v. Johnson, 319 U.S. 302, 305, 63 S.Ct. 1075, 1076, 87 L.Ed. 1413 (1943) (per curiam).
 
 
 8
 Assuming for argument that Justice Heller is not a proper adversary, appellant urges, nonetheless, that the defendant Clerk is, because he would necessarily take an administrative position adverse to her if she sued for divorce. As noted above, however, the Clerk has not yet been called upon to take any position in this matter, adverse or otherwise. More importantly, the Clerk's duties are not so limited as appellant would have us believe. Immediately after noting that the Clerk could reject jurisdictionally defective petitions, the court below stated:
 
 
 9
 If the plaintiff has a particular point--such as the present constitutional point--which in his or her judgment excuses the making of the allegedly indispensable allegation, the complaint can, upon the plaintiff's insistence, be submitted to the Judge. . . . It would then be the responsibility of the Judge to determine whether the residential requirement was unconstitutional or was valid and would be enforced.
 
 
 10
 380 F.Supp. at 988. The court concluded that there was 'a duty on (the Clerk's) part to file any complaint which tenders a non-frivolous question of jurisdiction requiring judicial resolution.' Id. at 990. Appellant has not challenged these findings; and we conclude that, because she has failed to demonstrate any reasonable likelihood that the Clerk would refuse to permit her to file her complaint, he is not an appropriate defendant. Longshoremen's Local 37, supra.
 
 
 11
 The Attorney General has no connection with the enforcement of § 230(5), and therefore cannot be a party to this suit. Ex Parte Young, 209 U.S. 123, 157, 28 S.Ct. 441, 52 L.Ed. 714 (1908). Although he has a duty to support the constitutionality of challenged state statutes, N.Y. Exec. Law § 71 (McKinney 1972), and to defend actions in which the state is 'interested', N.Y. Exec. Law § 63(1) (McKinney 1972), the Attorney General does so, not as an adverse party, but as a representative of the State's interest in asserting the validity of its statutes. See Federal Nat'l Mortgage Ass'n v. Lefkowitz, 383 F.Supp. 1294, 1296 n.1 (S.D.N.Y.1974).
 
 
 12
 Appellant asserts that the lower court's justiciability ruling improperly forces her to initiate state proceedings to vindicate her federal claim, Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); see McNeese v. Board of Education, 373 U.S. 668, 671--72, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Huffman v. Pursue, Ltd., 420 U.S. 592, 607 n.21, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and prevents her from seeking federal relief except in the Supreme Court. Huffman v. Pursue, Ltd., supra. Assuming the consequence of that decision to be as she says, we perceive no injustice therein. Appellant is required initially to present her claim to the New York courts, not because we feel compelled to defer to them as a matter of comity, but because, under the facts of this case, they are the only fora available to her.
 
 
 13
 We hold that, in its present posture, this action does not present the 'exigent adversity', Poe v. Ullman, 367 U.S. 497, 506, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961), which is an essential condition precedent to federal court adjudication. This, of itself, was a sufficient basis for the district court's dismissal of appellant's complaint. We therefore affirm.
 
 OAKES, Circuit Judge (concurring):
 
 14
 Probate and domestic relations are matters which have long been recognized as invoking, at least initially, interests which are predominantly of state concern. See In re Broderick's Will, 88 U.S. (21 Wall.) 503, 22 L.Ed. 599 (1875); Barber v. Barber, 62 U.S. (21 How.) 582, 584, 16 L.Ed. 226 (1858). In this narrow area of the law, we should be especially careful to avoid unnecessary or untimely interference with the State's administration of its domestic policies. See Kamhi v. Cohen, 512 F.2d 1051, 1056 (2d Cir. 1975). In my view, with these considerations in mind, we should dismiss this case as one not yet ripe for the assertion of federal jurisdiction.[1] The appellants, unlike the petitioner in Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), have never filed a complaint for divorce with the courts of the state whose law they seek to challenge. Until they do so, and the complaint is either summarily rejected by the clerk (as they claim it will be) or is considered by the New York courts,[2] the controversy which they seek to litigate in this court has not in my view sufficiently ripened into an active dispute between the parties. If the complaint when filed is administratively rejected without filing by the clerk, we would then have Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971), as ample precedent for federal court intervention. Absent such event, the cause is not ready therefor.
 
 
 15
 I concur in the judgment of dismissal.
 
 
 
 [1]
 N.Y.Dom.Rel.Law § 230 (McKinney Supp. 1975) provides:
 An action . . . for divorce or separation may be maintained only when:
 (5) Either party has been a resident of the state for a continuous period of at least two years immediately preceding the commencement of the action.
 In contrast, the other subsections of § 230 require a one year waiting period, or none at all, under circumstances not present here.
 
 
 [2]
 Our authority to review a three-judge court's dismissal of a complaint for lack of justiciability, grounds upon which a single district judge can decline to convene a three-judge court, is clear. Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 99--101, 95 S.Ct. 289, 42 L.Ed.2d 249 (1974). That the Supreme Court's direction to appeal initially to this Court did not include review of the constitutional merits is equally clear. Goosby v. Osser, 409 U.S. 512, 522 n.8, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973)
 
 
 [3]
 Appellant attempts to bolster her argument that Justice Heller is a proper adversary by reference to three federal cases which also challenged durational residency requirements for divorce despite the fact that prior state relief had not been sought, Mon Chi Heung Au v. Lum, 360 F.Supp. 219 (D.Hawaii 1973) (three-judge court); McCay v. South Dakota, 366 F.Supp. 1244 (D.S.D.1973) (three-judge court). Shiffman v. Askew, 359 F.Supp. 1225 (M.D.Fla.1973), decision for defendant affirmed on merits sub nom. Makres v. Askew, 500 F.2d 577 (5th Cir. 1974). These decisions provide scant support for appellant, however, because none mentions the justiciability issue under consideration here. Indeed, in McCay and in Shiffman no judges or judicial employees were named as defendants. Moreover, the subsequent history of Lum and McCay makes these cases particularly unattractive as precedents. The former was reversed on the merits, 512 F.2d 430 (9th Cir. 1975) (per curiam); the latter was vacated as moot, 420 U.S. 904, 95 S.Ct. 819, 42 L.Ed.2d 831 (1975)
 
 
 [1]
 The broader, evidently constitutional, basis of the majority's opinion is one which, with due respect, I do not join
 
 
 [2]
 I realize that under the principles of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1974), the appellants might be deprived of access to the federal district court if the state court takes jurisdiction and acts on the divorce complaint. See Sosna v. Iowa, 419 U.S. 393, 396 & n.3, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). See also Tang v. Appellate Division of the New York Supreme Court, First Dept., 487 F.2d 138 (2d Cir. 1973), cert. denied, 416 U.S. 906, 94 S.Ct. 1611, 90 L.Ed.2d 111 (1974). Were we in any area of the law, see Tang v. Appellate Division of the New York Supreme Court, First Dept., supra, 487 F.2d at 143 (Oakes, J., dissenting), other than domestic relations or probate, I would be most reluctant to expose a federal court civil rights plaintiff to such a Draconian requirement as going through what may very well turn out to be a futile, if not a fatal, gesture. But there is some solace even here in that the possibility of appeal to the Supreme Court from the state courts assures that ultimate federal review is available, and, of course, the state courts are bound to apply the United States Constitution as the supreme law of the land