**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| SAMIH HUSSEIN ZABADI, | No. 05-76565 |
| Petitioner, | Agency No. A070-830-132 |
| v. | |
| ERIC H. HOLDER JR., Attorney General, | MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 7, 2010
San Francisco, California

Before: REINHARDT, HAWKINS, and N.R. SMITH, Circuit Judges.

Samih Hussein Zabadi ("Zabadi"), convicted of sexual abuse of a minor in
California and subjected to deportation proceedings through Department of Homeland
Security's ("DHS") "Operation Predator" program, seeks review of a final order of

---

       [*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

deportation,[1] arguing the Board of Immigration Appeals ("BIA") erred when it (1) reversed the Immigration Judge's ("IJ") discretionary grant of waiver of inadmissibility under Immigration and Nationality Act ("INA") § 212(h), and (2) stated, in the course of affirming the IJ's denial of DHS's request to designate Jordan and Israel as countries for deportation, that nothing in its opinion barred DHS from acting "on its own authority" to designate a country. We deny the petition for review as to all claims.

*Reversal of Discretionary Grant of § 212(h) Relief*

Zabadi argues that his due process rights were violated when the BIA reversed the IJ's discretionary favorable grant of waiver of inadmissibility under § 212(h) and adjustment of status under INA § 245 because the BIA acted pursuant to an established policy of categorically denying § 212(h) relief to aliens apprehended through Operation Predator, and because DHS prosecutors and other officials exerted improper influence over the Executive Office for Immigration Review's ("EOIR") adjudicators through, inter alia, advertising campaigns and ex parte communications. Zabadi primarily requests transfer to a district court for factual development of these claims

---

[1] Zabadi's deportation proceedings commenced in May 1996, but the final order did not issue until November 2005. Thus, Zabadi's deportation proceeding was pending when Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (1996), in July 1996.

2

under 28 U.S.C. § 2347(b)(3), but argues in the alternative for reversal and remand for a full and fair determination of his eligibility for § 212(h) relief.

No Colorable Constitutional Claim

Although 8 U.S.C. §§ 1252(a)(2)(B)(i), (a)(2)(C) bar this court's review of an IJ's or the BIA's discretionary decision to deny relief, we nonetheless retain jurisdiction to entertain "constitutional claims or questions of law raised upon petition for review filed with an appropriate court of appeals[.]" 8 U.S.C. § 1252(a)(2)(D); *see Mendez-Castro v. Mukasey*, 552 F.3d 975, 978 (9th Cir. 2009) (citing *Martinez-Rosas v. Gonzales*, 424 F.3d 926, 930 (9th Cir. 2005)). This is because "a due process violation [by the BIA] is not an exercise of discretion." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1008 (9th Cir. 2003).

However, "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001). Rather, he "must allege at least a colorable constitutional violation." *Id.*; *see also Mendez-Castro,* 552 F.3d at 978. "To be colorable in this context, the alleged violation need not be substantial, but the claim must have some possible validity." *Martinez-Rosas*, 424 F.3d at 930 (quoting *Torres-Aguilar*, 246 F.3d at 1271) (internal quotation marks omitted).

3

Zabadi's claims do not rise to this level. Although the Fifth Amendment guarantees an alien due process in deportation proceedings, including the right to a full and fair hearing, an impartial adjudicator, and evaluation of the merits of his particular case, *see Torres-Aguilar*, 246 F.3d at 1270, none of Zabadi's allegations or proffered evidence demonstrates that he was deprived of these rights. In fact, the BIA explicitly acknowledged his outstanding equities, but ultimately found–in a reasoned and thorough opinion examining the evidence considered by the IJ in his case–that it would still deny relief in the exercise of discretion because the factors supporting the IJ's favorable grant could not overcome the "extremely serious nature" of Zabadi's particular crime. Further, the evidence Zabadi proffers fails to show a plausible connection between DHS actions, IJ rates for denial of discretionary relief, and any bias or prejudgment on the part of the BIA as a distinct subset of EOIR adjudicators. Zabadi simply has not shown that any policy of categorical prejudgment exists, nor that any such bias was applied in his case.

Zabadi's failure to identify a colorable constitutional claim in the petition or record deprives this court of jurisdiction to consider his petition on the merits. *Mendez-Castro*, 552 F.3d at 978; *Torres-Aguilar*, 246 F.3d at 1271. Because a demonstrably colorable claim is also a prerequisite to a § 2347(b)(3) transfer, *see*

4

*Gallo-Alvarez v. Ashcroft*, 266 F.3d 1123, 1129 (9th Cir. 2001), both the petition for review of Zabadi's constitutional claims and his motion to transfer must be denied.

### *Country Designation*

The BIA ultimately affirmed the IJ's determination that Kuwait was the only properly designated country for deportation, as well as its rejection of DHS's requests to designate Jordan and Israel. Zabadi did not contest the designation of Kuwait in his petition or on appeal to the BIA. Although the BIA decided the issue in his favor, Zabadi argues that the BIA erred in accompanying its affirmation with the statement that "nothing in either this Board's order or the Immigration Judge's ruling below forbids the DHS from acting on its own authority to designate a country, or forbids the parties from litigating that issue in any forum outside of the Executive Office of Immigration Review."

Zabadi challenges the BIA's legal analysis, arguing that in so stating, the BIA effectively granted DHS a free license to deport him to any country without notice, and without any avenue for judicial review, in violation of the statutory regime governing country designation under former INA § 243(a)(7). As such, he urges this court to exercise jurisdiction to decide the legal question of that section's proper statutory interpretation in light of subsequently enacted regulations.

5

However, because Zabadi has provided no evidence or argument that deportation to a destination outside Kuwait is likely or imminent, there appears to be no currently redressable injury. There is simply nothing demonstrating that the harm Zabadi seeks to avoid will ever happen, much less that it is likely to occur. As such, his claim is unripe because the threat of injury Zabadi alleges "'rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009) (citing *Texas v. United States*, 523 U.S. 296, 300 (1998)). *Cf. Reno v. Catholic Soc. Servs.*, 509 U.S. 43, 57 (1993) (requiring that alien present ripe claim to merit judicial review of order affecting adjustment of status application); *She v. Holder*, — F.3d —, No. 06-71794, 2010 U.S. App. LEXIS 25426, at *15-17 (9th Cir. 2010) (IJ correctly treated as unripe in initial proceedings petitioner's applications for CAT protection and withholding of removal to Burma, where Taiwan was the proposed country of removal and there was no evidence that the government would remove her to Burma; petitioner could move to reopen proceedings and reassert her applications and due process claims if DHS changed country designation after final order issued.).

Urging that this is his only forum for review of his legal claim because of the statutory limitations set forth in 8 U.S.C. §§ 1252(a)(1), (b)(9), and (g), Zabadi repeatedly expresses fear that he will be "whisked away" in the middle of the night,

deported anywhere in the world, and left with no forum or possibility of challenging deportation to a country in which he might suffer torture or persecution. The government agreed at oral argument that if the court were to find Zabadi's claim unripe here, it would refrain from deporting Zabadi at a time and in such a manner that he would be unable meaningfully to challenge the government's designation of another country for deportation. It further agreed that, if it later decided to change its designation from Kuwait to any other country, it would not oppose an appropriate petition or appeal by Zabadi for review of the new country designation on the grounds that (1) §§ 1252(a)(1) or (b)(9) bars challenge in any forum outside this petition, or (2) § 1252(g) bars challenge of DHS's actions in unilaterally designating a country after immigration courts issue the final order of deportation.

Taking the government at its word, we find Zabadi's petition for review of his legal claim unripe at this stage of the proceedings. We are thus without jurisdiction to consider it. Should DHS decide to change the designated country of deportation, Zabadi's claim will ripen, and he will be free to pursue appropriate legal remedies.

**PETITION DENIED.**